RECEIVED
MAR 23 2016
AT 8:30_____M
WILLIAM T. WALSH, CLERK

NPG 2010R01313

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA | : Hon. Jose L. Linares |
| | : |
| | : Criminal No. 16- 155 |
| v. | : |
| | : 18 U.S.C. § 371 |
| | : 15 U.S.C. §§ 78j(b) & 78ff |
| | : 17 C.F.R. § 240.10b-5 |
| | : 18 U.S.C. § 2 |
| GUY GENTILE | : |

## INDICTMENT

The Grand Jury in and for the District of New Jersey, sitting at Newark, charges:

### COUNT ONE
### (Conspiracy to Commit Securities Fraud)

### Background

1. At times relevant to this Indictment:

***Relevant Entities and Individuals***

    a. Defendant GUY GENTILE ("defendant GENTILE") was the founder and owner of a registered broker-dealer located in Carmel, New York. Defendant GENTILE was involved in the promotion of "penny" or "micro-cap" stocks, the stocks of publicly traded companies with low share prices that often traded on quotation services and marketplaces operated by OTC Markets Group Inc., such as the OTC Bulletin Board ("OTCBB"), OTC QB, OTC Pink, or Pink Sheets.

b.  Michael Taxon, a conspirator not named as a defendant herein, was a resident of Toronto, Ontario, Canada. Taxon was a stockbroker in Canada in the 1990s, and from approximately 2005 through approximately 2009, he operated a stock promotion business in Canada that focused on penny stocks.

c.  Itamar Cohen, a conspirator not named as a defendant herein, was a resident of Toronto, Ontario, Canada, and a partner in Taxon's penny stock promotion business in Canada.

d.  Raven Gold Corporation ("RVNG") was a Nevada corporation headquartered in Vancouver and Penticton, British Columbia, Canada, and its common stock was a penny stock quoted on the OTCBB. RVNG was controlled by two Canadian citizens (collectively the "RVNG Owners").

e.  Kentucky USA Energy, Inc. ("KYUS"), was a Delaware corporation headquartered in London, Kentucky, which purported to be engaged in shale gas exploration in western Kentucky. KYUS common stock was a penny stock quoted on the OTCBB. RVNG and KYUS are collectively referred to herein as the "Target Companies."

**Overview of the Scheme**

f.  From at least as early as April 2007 through in or about June 2008, defendant GENTILE and his conspirators engaged in an extensive "pump-and-dump" stock manipulation scheme involving the Target Companies, i.e., a scheme to fraudulently inflate the prices of shares of the

2

Target Companies in order to later sell those shares at artificially inflated prices.

  g. As part of the scheme, defendant GENTILE and his conspirators first obtained control over large blocks of the free-trading shares of the Target Companies.

  h. Next, defendant GENTILE and his conspirators "pumped" the price of those shares by, among other things, (i) engaging in manipulative trading of the stocks of the Target Companies, and (ii) disseminating misleading promotional materials touting the stocks and encouraging others to purchase them.

  i. After pumping the stocks, defendant GENTILE and his conspirators "dumped" the stocks; that is, they sold large volumes of the Target Companies' stock to victim-investors at artificially inflated prices.

  j. Following the dump phase, the Target Companies' stock prices dropped, causing victim-investors to suffer losses and generating approximately $17.2 million in gross trading proceeds for defendant GENTILE and his conspirators.

## The Conspiracy

2. From at least as early as in or about April 2007 through in or about June 2008, in the District of New Jersey and elsewhere, the defendant,

**GUY GENTILE**,

knowingly and willfully conspired and agreed with others to commit an offense against the United States, to wit: securities fraud, contrary to Title 15, United

3

States Code, Sections 78j(b) and 78ff, and Title 17, Code of Federal Regulations, Section 240.10b-5.

## Object of the Conspiracy

3. The object of the conspiracy was for defendant GENTILE and his conspirators to enrich themselves by engaging in a pump-and-dump scheme with the Target Companies.

## Manner and Means of the Conspiracy

### The RVNG Pump-and-Dump Scheme

4. It was part of the conspiracy that, in or about April 2007, the RVNG Owners recruited Taxon and Cohen to promote the stock of RVNG as part of a pump-and-dump scheme, and Taxon and Cohen in turn recruited defendant GENTILE to be part of that scheme.

5. It was further part of the conspiracy that, between in or about May 2007 and in or about July 2007, the RVNG Owners caused approximately 10 million unrestricted RVNG shares to be delivered to brokerage accounts controlled by Taxon, Cohen, and defendant GENTILE.

6. It was further part of the conspiracy that, upon receiving the RVNG shares, defendant GENTILE, Taxon, and Cohen engaged in manipulative trading, such as coordinated, cross, or match trades in which the conspirators were on both the "buy" and "sell" side of the same trades, to create the appearance of liquidity, market depth, and demand for RVNG.

7. It was further part of the conspiracy that, in or around July 2007, to create demand for RVNG stock, defendant GENTILE and his conspirators

4

caused the wide dissemination of an eight-page, glossy promotional mailer (the "RVNG Mailer"), as well as other media advertisements, that had false and misleading information about RVNG, including that the stock had a "strong move upward" in "recent weeks" and a "remarkable uptrend" attributable to RVNG's strong business prospects, when in fact the stock's upward movement was attributable in part or even solely to the conspirators' manipulative trading.

8.  It was further part of the conspiracy that defendant GENTILE sold millions of shares of RVNG through wire transactions in interstate and foreign commerce at artificially inflated prices for profits of more than approximately $6 million.

**The KYUS Pump-and-Dump Scheme**

9.  It was further part of the conspiracy that, following the successful RVNG pump-and-dump scheme, in or about October 2007, Taxon and Cohen wired approximately $300,000 to defendant GENTILE's bank accounts to be used to finance part of the fraudulent promotion of KYUS.

10. It was further part of the conspiracy that, through a series of transfers in or about November 2007, defendant GENTILE acquired and controlled approximately 9 million unrestricted shares of KYUS.

11. It was further part of the conspiracy that, after acquiring the KYUS shares, defendant GENTILE and his conspirators engaged in manipulative trading, including coordinated trades and "walking up the bid," where conspirators placed and then canceled multiple successively higher bids to

purchase the stock, using foreign and domestic accounts they controlled, to create the appearance of liquidity, market depth, and demand for KYUS.

12. It was further part of the conspiracy that, in or around May 2008, to create demand for KYUS stock, defendant GENTILE and his conspirators caused the wide dissemination of a promotional mailer that had false and misleading information about KYUS.

13. It was further part of the conspiracy that defendant GENTILE and his conspirators sold millions of shares of KYUS through wire transactions in interstate and foreign commerce at artificially inflated prices for profits of several million dollars.

## OVERT ACTS

14. In furtherance of the conspiracy and to effect its unlawful objects, the following overt acts, among others, were committed in the District of New Jersey and elsewhere:

   a. On or about November 20, 2007, defendant GENTILE, through a server located in Carteret, New Jersey, placed a "sell" order for 1,500 KYUS shares at $.60 per share with a market maker, and thereafter placed a "buy" order for 1,500 KYUS shares at $.60 per share through the same market maker.

   b. On or about May 22, 2008, defendant GENTILE caused approximately $400,000 to be wired to Taxon for part of Taxon's share of the illegal proceeds in connection with the KYUS pump-and-dump scheme.

6

      c.    On or about May 27, 2008, defendant GENTILE caused $2.5 million of his illegal proceeds from the KYUS pump-and-dump scheme to be wired to individuals at KYUS.

All in violation of Title 18, United States Code, Section 371.

## COUNT TWO
### (Securities Fraud)

1. The allegations set forth in paragraph 1 and paragraphs 3 through 14 of Count One of this Indictment are repeated and realleged as if fully set forth herein.

2. Between in or about November 2007 and in or around May 2008, in the District of New Jersey, and elsewhere, the defendant,

**GUY GENTILE**,

by use of the means and instrumentalities of interstate commerce, the mails, and facilities of national securities exchanges, directly and indirectly, did knowingly and willfully use manipulative and deceptive devices and contrivances in contravention of Title 17, Code of Federal Regulations, Section 240.10b-5 in connection with the purchase and sales of securities by: (a) employing devices, schemes, and artifices to defraud members of the investing public; (b) making untrue statements of material facts and omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices, and a course of business which operated and would operate as a fraud and deceit upon persons, in that he participated in a scheme to defraud the investing public by trading in the securities of Kentucky USA Energy, Inc., for the purpose of artificially inflating and manipulating the price and value of those securities.

In violation of Title 15, United States Code, Section 78j(b) and Section 78ff; Title 17, Code of Federal Regulations, Section 240.10b-5; and Title 18, United States Code, Section 2.

## FORFEITURE ALLEGATIONS

1. As the result of committing the offenses constituting specified unlawful activity as defined in 18 U.S.C. § 1956(c)(7), as alleged in Counts One and Two of this Indictment, defendant GUY GENTILE shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of the said conspiracy and securities fraud offenses, and all property traceable thereto.

2. If by any act or omission of the defendant, any of the property subject to forfeiture described above:

   a. cannot be located upon the exercise of due diligence;
   b. has been transferred or sold to, or deposited with, a third party;
   c. has been placed beyond the jurisdiction of the court;
   d. has been substantially diminished in value; or
   e. has been commingled with other property which cannot be subdivided without difficulty;

It is the intent of the United States, pursuant to 21 U.S.C. § 853(p), as incorporated by 28 U.S.C. § 2461(c), to seek forfeiture of any other property of the defendant up to the value of the above-described forfeitable property.

A TRUE BILL

_____
FOREPERSON

*Paul J. Fishman* (signature)
PAUL J. FISHMAN
United States Attorney

10

CASE NUMBER: 16-155 (JLL)

# United States District Court
# District of New Jersey

UNITED STATES OF AMERICA

v.

GUY GENTILE

# INDICTMENT FOR

18 U.S.C. § 371, 15 U.S.C. §§ 78J(b) and 78ff, and 17 C.F.R. § 240.10b-5



**PAUL J. FISHMAN**
*UNITED STATES ATTORNEY*
*NEWARK, NEW JERSEY*

NICHOLAS P. GRIPPO
*ASSISTANT U.S. ATTORNEY*
(973) 645-2915