UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

UNITED STATES OF AMERICA,

v.

GUY GENTILE,
                    Defendant.

Civil Action No.: 16-cr-155 (JLL)

**OPINION**

**LINARES**, District Judge.

This matter comes before the Court by way of Defendant Guy Gentile's Motion to Dismiss the Indictment (ECF No. 14("Def Mov. Br.")). The Government has submitted opposition (ECF No. 19 ("Gov. Opp. Br.")), which Defendant has replied to. (ECF No. 23 ("Def. Rep. Br.")). The Court decides this matter after hearing oral argument on December 21, 2016. (ECF Nos. 29, 31). For the reasons set forth below, the Court grants Defendant's Motion to Dismiss.

### I. BACKGROUND

Defendant was indicted for securities fraud violations in connection with "pump-and-dump scheme[s]," that allegedly occurred beginning in April of 2007 and ended approximately in June 2008. (ECF No. 1 ("Indictment")). At the time that Defendant's alleged criminal conduct ended in June 2008, the applicable statute of limitations was five years, pursuant to 18 U.S.C. § 3282(a). On June 25, 2012, Defendant was charged in connection with said schemes by way of sealed complaint. (Gov. Opp. Br. at 5). There is no dispute that, as previously stated, Defendant's alleged criminal activity had ended as of June 2008. *See* December 21, 2016 Transcript ("Trans.") at 41:21-42:11. He was arrested based on the sealed complaint on July 13, 2012. (Gov. Opp. Br. at

5). The Government asserts that subsequent to the arrest and while in custody over the weekend, Defendant admitted his involvement in the pump-and-dump schemes, identified other similar schemes, and agreed to cooperate with the Government. (*Id.*). He was released three days later. (*Id.*). At that time, on August 1, 2012 Defendant signed a waiver tolling "any statute of limitations" relating to the charges for the period of July 31, 2012 through July 31, 2013 ("First Tolling Waiver"). (Gov. Opp. Br. at 6; *see also* Exhibit G to Ford Cert.). One year later, on July 31, 2013 Defendant signed a second waiver tolling the statute of limitations for the period of July 31, 2013 through July 31, 2014 ("Second Tolling Waiver"). (*Id.*; *Id.* at Exhibit H). This was the last waiver signed by Defendant who refused to sign a third tolling waiver, allegedly because he wanted everything to be over by June 30, 2015. (*See* Defendant Cert. ¶¶ 19 ("because I was concerned the government would try to force me to cooperate indefinitely, I told the government that I was refusing to sign another tolling affidavit because I wanted to be certain that everything was over on June 30, 2016"), 22 ("The government continued using me as a cooperator all through the summer of 2015, over a year after I refused to sign an additional tolling agreement upon the explicit statement that I was not signing so I could be sure everything was fully resolved a year later."); Ford Cert. ¶ 18 ("During the August 2014 meeting, I told everyone present that Mr. Gentile was refusing to sign another tolling agreement because, in sum and substance, he wanted to make sure that everything was over by June 30, 2015"); Trans. at 67:17-21 ("Mr. Ford states that he told everyone present at a meeting with the Government on (*sic*) August 2014, that Mr. Gentile was refusing to sign another tolling agreement because in sum and substance, he wanted to make sure that everything was over by June 30th, 2015.")).

2

In June of 2015, the Government notified Defendant's attorney that it would not agree to a non-felony disposition, as Defendant desired, and was prepared to proceed with a felony disposition based on a binding plea agreement. (Id.). The plea agreement that was presented to Defendant, if followed by the Court, would have resulted in a sentence of probation. (Id.). Defendant rejected the plea off and was subsequent indicted on March 23, 2016. (Indictment at 1).

Defendant now moves to dismiss the aforementioned indictment asserting it is untimely for two reasons. (*See generally* Def. Mov. Br.). First, Defendant argues that the enactment of "Dodd-Frank Wall Street Reform and Consumer Protection Act" ("Dodd-Frank") on July 21, 2010, and the six-year statute of limitations for securities fraud violations contained therein, is inapplicable to Defendant since his criminal acts took place prior to said statute's enactment. (Def. Mov. Br. at 20-23), and argues that the five-year statute of limitations that was in effect at the time of the completion of the alleged crimes is the statute of limitations applicable to him. (Id.). Thus, Defendant avers that the latest possible date he could have been charged, even if both statute of limitation waivers are valid, would have been June 30, 2015. (Id.). Therefore, it is Defendant's position that the indictment filed March of 2016 is untimely. (Id.).

Defendant also argues that even assuming that the six-year statute of limitations is in fact applicable, the statute of limitation waivers signed by Defendant are nevertheless invalid because they were made unknowingly. (Def. Rep. Br. at 27-30). Defendant asserts that at all times, and specifically at the times the waivers were signed by him, both he and the Government were clearly operating under the assumption that the statute of limitations was in fact five years. (Id.). The Government has conceded this point. (*See* Trans. at 33:3-4). Thus, Defendant's position is that

3

even assuming the statute of limitations applicable to his case is actually six years, he entered into both tolling waivers under the expressed assumption that the statute of limitations applicable at the time was indeed five years and he therefore signed the aforesaid waivers without knowledge or a clear understanding as to the rights he was in fact waiving. (Def. Rep. Br. at 27-30). Defendant claims that therfore these waivers were made unknowingly are are invalid. If the waivers are in fact found to be invalid by this Court, the indictment, according to Defendant, needed to be filed by June 30, 2014 under the six-year statute of limitations. (Id.). Thus, Defendant concludes the March 2016 indictment is untimely.

The Court addresses both of these arguments separately below.

## II.   DISCUSSION

### A. Validity of the Statute of Limitation Tolling Waivers

In determining the statute of limitations applicable herein, and in deciding the validity of the waivers at issue, this Court is cognizant that criminal statutes of limitations are to be interpreted in favor of repose. *Toussie v. United States*, 397 U.S. 112, 115 (1970)(quotations and citation omitted); *see also United states v. Atiyeh*, 402 F.3d 354, 365 (3d Cir. 2005). The Court is also aware that a defendant entering into a waiver of the statute of limitations is abandoning an important statutory right. *See U.S. v. Levine*, 658 F.2d 113, 115 (3d Cir. 1981)(citing *U.S. v. Wild*, 551 F.2d 418 (D.C. Cir.), *cert. denied*, 413 U.S. 916 (1977)(which held that the statute of limitations was a waivable right)). "Much like plea bargaining, a waiver of the statute of limitations is a pretrial agreement between the state and the defendant." *U.S. v. Levine*, 658 F.2d 113, 124 (3d Cir. 1981). Since they are similar, waivers involve a relinquishment of important rights and "should also be made with the advice of counsel and *informed by an understanding of the*

*consequences of the waiver.*" *Levine*, 658 F.2d at 124 (emphasis added); *see also Houmis v. U.S.*, 558 F.2d 182, 183 (3d Cir. 1977)(holding that where "substantial confusion" calls into question whether there was a "meeting of the minds" over a plea agreement, there is no agreement to be enforced); *McKeever v. Warden, SCI-Graterford*, 486 F.3d 81, 95 (3d Cir.), *cert. denied*, 128 S. Ct. 538 (2007)(stating that a plea agreement "is voidable in its entirety" when the Defendant entered into such agreement without the knowledge and understanding of the rights being waived).

It is in the context of the aforesaid law that this Court conducts its analysis. Here, the statute of limitations for securities fraud was, without dispute from either side, five years at the time Defendant allegedly committed the subject violations. *See* 18 U.S.C. § 3282(a). In fact, the Government claims that Defendant's last criminal act occurred in June of 2008. Thus, the five-year criminal statute of limitations applicable at that time expired as of June of 2013. Defendant was arrested in July of 2012, which meant that if he were going to cooperate with the Government he only had 11 months to do so before the statute of limitations expired. However, Defendant nevertheless executed two tolling waivers which, to his detriment, extended the statute of limitations he and the Government though applied to him at that time in order to allow himself more time to cooperate with the Government with the apparent hope that the Government would take his cooperation under consideration. Thus, the limitations period, as extended by the waivers Defendant signed under the five-year statute of limitation, which was the statute that both the Government and Defendant thought they were operating under, along with the tolling waivers, gave the Government until June 30, 2015 to timely indict Defendant.

Both parties admittedly were operating under the assumption that the statute of limitations was five years. *See* Trans. at 9:16-22. In fact, the Second Tolling Waiver even included the date

of June 30, 2015 as the latest possible date the Government could institute a criminal action against Defendant. *See* Trans. at 35:3-14. "[T]he Government [also admits] it was operating under the understanding that the statute of limitations was five years." *See* Trans. at 33:3-4.

Presently, the Government argues that, notwithstanding the parties' assumption that the statute was five years at the time the waivers were executed, the statute of limitations was actually six years, because the enactment of Dodd-Frank clearly extended the statute of limitations for certain securities fraud violations, including the one that Defendant was eventually charged with. 18 U.S.C. § 3301; *see also* Trans. at 33:19-34:19. Defendant, in turn, asserts that he would not have signed the waivers if, at any time, he thought or was advised that the statute of limitations being applied to his criminal matter was six years. *See* Trans. 66:13-67:21; *see also* Ford Cert. ¶18. The Court finds this assertion credible since it seems to be buttressed by the fact that he expressed to his attorneys and the Government that he wanted to assure this case would be resolved on or before June 30, 2015; the date that the twice-extended five-year statute of limitations would have expired. *See* Trans. at 67:18-21. Therefore, it appears that repose after this date was important to Defendant. In fact, in an August 2014 meeting Defendant refused to sign a third tolling waiver, further exhibiting that he sought to have the matter resolved by June 30, 2015, the date he, as well as the Government, thought the twice-extended five-statute statute of limitations would have expired. *See* Trans at 67:22-25; Defendant Cert. ¶ 19, 22; Ford Cert. ¶ 18.

Accordingly, this Court finds that, limited to the specific facts of this case, Defendant unknowingly executed both tolling waivers. In those waivers, he waived specific and important rights, and extended his exposure to criminal liability by two years, an important consideration for any defendant in this context and based on Defendant's clear desire at the time he signed the

6

waivers to assure the matter concluded by June 30, 2015. In order for statute of limitation waivers to be valid, just the same as plea agreements, they had to be entered into knowingly and intelligently. *Levine*, 658 F.2d at 124. Here, the waivers were executed unknowingly since Defendant clearly thought he was extending his exposure to criminal prosecution by two years when in fact, if the statute of limitations were six years, he was extending the period of exposure by three years. Thus, the waivers are invalid, therefore the statute of limitations was not tolled. Hence, the March 23, 2016 indictment is untimely, regardless of which statute of limitations is applicable. The limitations period would have expired either on June 30, 2013 (under the five-year statute of limitation) or June 30, 2014 (under the six-year statute of limitation). Under either scenario, the March 23, 2016 indictment was untimely and must be dismissed.

### B. Retroactivity of Dodd-Frank's Statute of Limitations

As to this issue, it is the Government's position that the passing of Dodd-Frank extended the statute of limitations to six years, thereby, even with the tolling waivers in place, June 30, 2016 was the latest possible date to timely file the indictment. Defendant argues that the Government's position seeks improper retroactive application of a statute and the proper statute of limitations pertaining to Defendants' alleged crimes remains five years because it was the applicable statute at the time Defendant completed the alleged violations.

As previously noted *supra*, criminal statutes of limitations are to be interpreted in favor of repose. *Toussie*, 397 U.S. at 115. The purpose of criminal statutes of limitations is to "limit exposure to criminal prosecution to a certain fixed period of time following the occurrence of" criminal acts. *U.S. v. Midgley*, 142 F.3d 174, 177 (3d Cir. 1998)(citing *Toussie*, 397 U.S. at 114). The limitations are "designed to protect individuals from having to defend themselves against

7

charges when the basic facts may have become obscured by the passage of time and to minimize the danger of official punishment because of acts in the far-distant past." *Midgley*, 142 F.3d at 177. Moreover, "[l]imitations statutes ... are intended to foreclose the potential for inaccuracy and unfairness that stale evidence and dull memories may occasion in an unduly delayed trial." *United States v. Levine*, 658 F.2d 113, 127 (3d Cir.1981).

To that effect, there is a "presumption against *retroactive* legislation [which] is deeply rooted in [Supreme Court] jurisprudence." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 265 (1994)(emphasis added). "[T]his time-honored presumption [must be applied] *unless Congress has clearly manifested its intent to the contrary.*" *Hughes Aircraft Co. v. U.S. ex rel. Schumer*, 520 U.S. 939, 946 (1997)(emphasis added). Further, the concept that "the legal effect of conduct should ordinarily be assessed under the law that existed when the conduct took place has timeless and universal appeal.'" *Landgraf*, 511 U.S. at 265 (quoting *Kaiser Aluminum & Chem. Corp. v. Bonjorno*, 494 U.S. 827, 855 (1990) (Scalia, J., concurring)).

In order to properly address the issue of the competing statute of limitations at issue in this case, "the [C]ourt's first task is to determine whether Congress expressly proscribed the statute's proper reach." *Landgraf*, 511 U.S. at 280. If so, the analysis ends, but if not "the [C]ourt must determine whether the new statute would have retroactive effect." *Id.* Examples of retroactive effect include "whether [the statute] would impair rights of a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *Id.* If so, then the statute is not to be applied retroactively "absent clear Congressional intent favoring such a result." *Id.*

8

This Court finds that the six-year statute of limitations created by Dodd-Frank is inapplicable to the crimes Defendant allegedly committed in 2007 and 2008. The above recitation of the law makes it clear that the Supreme Court does not favor retroactive statute of limitation application, absent clear Congressional intent. At the time Defendant committed his criminal acts, he had a statutory right which protected him from criminal prosecution five years from the date he committed said acts. Section 3301 of Dodd-Frank contains no discussion nor mention of retroactivity, let alone clear intent that Congress intended that section to apply to crimes committed prior to its enactment. Thus, under *Landgraf*, without clear Congressional intent this provision must be applied prospectively.

The Government argues that since the Legislature failed to include language regarding the prospective versus retroactive application this Court must engage in further analysis under *Landgraf*. According to the Government, Section 3301 is confusing because it is entitled "*Extension* of Statute of Limitations for Securities Fraud Violations," but contains no language as to how Congress intended to extend the statute of limitations. (emphasis added). In other words, the Government believes that including the word "extension" in the title, but not explaining whether Section 3301 is retroactive renders its retroactive applicability unclear. This Court finds these arguments unpersuasive.

First, *Landgraf* involved a civil statute of limitations, while this case deals with a criminal statute of limitations. This distinction is not lacking importance, because the Supreme Court has held that "criminal" statutes of limitations must be interpreted in favor of repose. However, no such directive exists with relation to "civil" statute of limitations. Thus, when *Toussie*, *Hughes* and *Landgraf* are read in conjunction it is apparent to this Court that it must interpret the statute of

9

limitations in a manner favoring repose for Defendant. Therefore, this Court finds that absent clear legislative intent to apply Section 3301 retroactively the Court will refrain from doing so. The Third Circuit has previously rejected this argument in *United States v. Richardson*, 393 F. Supp. 83 (W.D. Pa. 1974), *aff'd* 512 F.2d 105 (3d Cir. 1975). There, defendant was required to register with the Selective Service System within five days of his 18th birthday under § 13 of the Military Selective Service Act. *Richardson*, 393 F. Supp. at 84. Richardson failed to abide by the law. *Id.* Identical to this case, at the time Richardson committed his criminal act, the statute of limitations was five years under 18 U.S.C. § 3282. However, in response to the Supreme Court's opinion in *Toussie*, Congress amended the statute of limitations so that the Government could prosecute men who failed to register for up to five years after the 26th birthday. *Id.* at 85. Once again identical to the matter *sub judice*, the amendment went into effect prior to the expiration of the five-year statute of limitations applicable to Richardson. *Id.* at 84.

There, as here, the Government argued that because the amendment was entitled "*Extension* of Statute of Limitations on Prosecution for Non-Registration to Five Years after a Registrant's Twenty-Sixth Birthday" Congress must have intended to extend the time the Government had to prosecute all non-registering men, including those who committed the crime prior to enactment. *Id.* at 85-86. (emphasis added). The *Richardson* Court rejected said argument stating "*Congress did not explicitly state that it intended the statute to apply retroactively as it assuredly could have done, and has done.*" *Id.* at 87. (emphasis added). The Court further held that it did not believe it prudent to extend the statute of limitations by way of judicial order "[i]n the absence of a *clear statement from Congress that it intended retroactive application* of the

10

extended statute. *To do so would presume that Congress was in error – that it passed a statute which did not reflect its intent.*" *Id.* (emphasis added)

Here, this Court reaches the same result. Defendant allegedly engaged in illegal securities fraud activities ending in June 2008. At that time, the statute of limitations for his offense was five years under 18 U.S.C. § 3282(a). Thereafter, and prior to the expiration of the five-year statute of limitations, Congress enacted Dodd-Frank in July of 2010 which made the statute of limitations for securities fraud six years. Section 3301 is entitled "*Extension* of Statute of Limitations for Securities Fraud Violations," but contains no language that could possibly be construed to mean Congress clearly intended for Section 3301 to be applied retroactively. (emphasis added). Therefore, consistent with *Richardson*, this Court finds that Section 3301 should not be applied retroactively as it does not contain the requisite language indicating clear Congressional intent to do so.

Therefore, even if this Court were to find that the tolling waivers were valid, which it does not, the indictment would still be untimely. This is because the statute of limitations applicable to Defendant's conduct in June of 2008 is five years. Thus, even if the tolling waivers were to apply, the statute expired on June 30, 2015. The Government filed the indictment on March 23, 2016. Accordingly, the indictment was out of time and must be dismissed.

### III.    CONCLUSION

For the aforementioned reasons, Defendant's Motion to Dismiss the indictment is granted. An appropriate Order accompanies this Opinion.

DATED: January 30th, 2017

JOSE L. LINARES
UNITED STATES DISTRICT JUDGE